747 A.2d 600

**COUNTY COMMISSIONERS OF CAROLINE COUNTY, Maryland**

v.

**J. ROLAND DASHIELL & SONS, INC.**

**No. 81, Sept. Term, 1999.**

Court of Appeals of Maryland.

Feb. 11, 2000.

Reconsideration Denied April 7, 2000.

84

Anthony L. Meagher (Brett Ingerman, Piper, Marbury, Rudnick & Wolfe, LLP, on brief), Baltimore, for petitioner.

J. Edward Martin (Law Office of J. Edward Martin, P.A.), Towson; Russell D. Dashiell, Jr. (Widdowson & Dashiell, on brief), Salisbury, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and ROBERT L. KARWACKI (retired, specially assigned), JJ.

CATHELL, Judge.

On July 10, 1997, J. Roland Dashiell & Sons, Inc. (Dashiell), respondent, filed a complaint in the Circuit Court for Caroline County against the County Commissioners of Caroline County (County), petitioner, and Greenhorne & O'Mara, Inc. (Greenhorne), claiming damages in excess of $2,000,000.00 for the alleged extra cost of work and delays and seeking the payment of $326,621.00 withheld by the County as liquidated damages pursuant to the Standard Form of Agreement Between Owner and Contractor dated February 22, 1994 (Dashiell Contract).

On August 5, 1997, respondent filed an amended complaint. On August 26, 1997, petitioner filed a Motion to Dismiss on the ground that respondent's claims under the Dashiell Contract were barred by its failure to file them in a timely manner as required by that contract and that any quasi-contractual claims were barred because of the express written contract between the parties. Respondent responded with a Second Amended Complaint on September 11, 1997, arguing that the County had waived that defense by its conduct. On September 17, 1997, respondent filed an untimely Answer to petitioner's Motion to Dismiss, which attached the Affidavit of Donald Dashiell. On October 6, 1997, petitioner filed a Second Motion to Dismiss or, in the alternative, for Summary Judgment and on January 26, 1998, the Circuit Court entered judgment in favor of the County and granted Greenhorne's Motion to Dismiss for failure to state a claim upon which relief could be granted. As part of this ruling, the trial court ruled that the Affidavit of Donald Dashiell was defective for want of a verification on personal knowledge. On February 3, 1998, respondent resubmitted the Affidavit of Donald Dashiell replacing the words, "according to my best knowledge, information and belief" with "upon personal knowledge." Respondent's Motion for Reconsideration was denied on February 25, 1998.

Respondent appealed to the Court of Special Appeals.[1] In an unreported opinion, the intermediate appellate court af-

---

1. The Court of Special Appeals addressed five issues:
   I.   Whether Caroline County had the right unilaterally to impose liquidated damages when the verified evidence demonstrates delays caused by the County's agents, incompetent plans by the Architect and an absence of proper supervision.
   II.  Whether Dashiell's claim for breach of implied warranty should have been dismissed where the verified evidence was that delays throughout progress of the job were caused by the Architect's poor plans and drawings as well as by the Architect's refusal to answer the Contractor's requests for direction, assistance and clarification.
   III. Whether the Contractor could maintain a negligence action against the Architect where the Architect had complete control over the project, all communication between Owner and Contrac-

firmed the circuit court's decision as to the contract claims, holding that respondent's failure to comply with the Dashiell Contract's claim provisions barred its claims for breach of contract. That court also affirmed the circuit court's decision that respondent's quasi-contractual claim for quantum meruit was barred because there was an express contract between the parties. Neither of these two issues were the subject of a Petition for Writ of Certiorari. Accordingly, they are not before us.

The Court of Special Appeals, however, did reverse the circuit court's decision to grant summary judgment on Dashiell's quasi-contractual claim for unjust enrichment.[2] Additionally, the Court of Special Appeals disagreed with the trial court's finding that the defective Affidavit was fatal to respondent's claims. The County, seeking review of these last two holdings, presents the following questions to this Court:

I.  Does the express, written contract between the County and [respondent] bar [respondent]'s quasi-contractual claim for unjust enrichment?

II. Was [respondent]'s claim for unjust enrichment properly dismissed because the Affidavit of Donald Dashiell in

tor was through the Architect and where the verified evidence was that delays throughout the progress of the job were caused by the Architect's poor plans and drawings.
IV. Whether Dashiell should be reimbursed for the hundreds of thousands of dollars it paid out for months to finish the jail after the County stopped payments to Dashiell where the jail was received and used for prisoners immediately after Dashiell left the job.
V.  Did the circuit court properly grant the County's Motion for Summary Judgment because the Affidavit of Donald Dashiell in opposition to the County's motion was inadequate as a matter of law?

**2.** Neither the opinion of the Court of Special Appeals nor the written and oral presentations by the respondent in this Court make clear, either factually or from the standpoint of the measure of recovery, exactly what the perceived difference is in this case between the "quantum meruit" claim and the "unjust enrichment" claim. Nevertheless, we shall use the purportedly distinguishing terminology that has been employed in this case. The distinction, if any, makes no difference in the result.

opposition to the County's Motion for Summary Judgment was inadequate as a matter of law?

## I. Facts

In November 1989, as a first step in the process of renovating and adding to the County's correctional facility, petitioner entered into a Standard Form of Agreement Between Owner and Architect with Greenhorne for improvements to the Caroline County Detention Center (Greenhorne Contract). Respondent was not a party to this agreement. Pursuant to it, Greenhorne, an architectural firm, was responsible for designing the renovation and for providing supervision and monitoring services during the actual construction of the building addition. The project consisted of a 7,000 to 7,700 square foot, three-story addition to the existing Caroline County Detention Center located in Denton, Maryland, and a 3,700 to 4,200 square foot renovation of the original facility.

On February 22, 1994, the County entered into the Dashiell Contract with respondent for construction of the proposed renovation. For a total sum of $3,075,383.00, respondent agreed to furnish all labor, equipment, materials, and services, and perform all of the work necessary to renovate and expand the detention center by a date no later than 425 calendar days after the date of commencement. Section 3.2 of the Dashiell Contract specifically provides that liquidated damages of $500 per calendar day would be assessed if Dashiell failed to complete the project within the 425 calendar-day period.

Section 9.1.7 of the Dashiell Contract allowed for the incorporation of additional documents intended to form part of the contract documents. The parties agreed to include American Institute of Architects, General Conditions of the Contract for Construction, Document A201 (1987), which contains the provisions of the contract that are the subject of this appeal. The relevant provisions are as follows:

4.3.1 **Definition.** A Claim is a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money,

extension of time or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. Claims must be made by written notice. The responsibility to substantiate Claims shall rest with the party making the Claim.

. . . .

**4.3.3 Time Limits on Claims.** Claims by either party must be made within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later. Claims must be made by written notice. An additional Claim made after the initial Claim has been implemented by Change Order will not be considered unless submitted in a timely manner.

. . . .

**4.3.7 Claims for Additional Costs.** If the Contractor wishes to make Claim for an increase in the Contract Sum, written notice as provided herein shall be given before proceeding to execute the Work. Prior notice is not required for Claims relating to an emergency endangering life or property arising under Paragraph 10.3. If the Contractor believes additional cost is involved for reasons including but not limited to (1) a written interpretation from the Architect, (2) an order by the Owner to stop the Work where the Contractor was not at fault, (3) a written order for a minor change in the Work issued by the Architect, (4) failure of payment by the Owner, (5) termination of the Contract by the Owner, (6) Owner's suspension or (7) other reasonable grounds, Claim shall be filed in accordance with the procedure established herein.

**4.3.8 Claims for Additional Time.**

**4.3.8.1** If the Contractor wishes to make Claim for an increase in the Contract Time, written notice as provided herein shall be given. The Contractor's Claim shall include an estimate of cost and of probable effect of delay on

progress of the Work. In the case of a continuing delay only one Claim is necessary.

**4.3.8.2** If adverse weather conditions are the basis for a Claim for additional time, such Claim shall be documented by data substantiating that weather conditions were abnormal for the period of time and could not have been reasonably anticipated, and that weather conditions had an adverse effect on the scheduled construction.

. . . .

**13.4.2** No action or failure to act by the Owner, Architect or Contractor shall constitute a waiver of a right or duty afforded them under the Contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach thereunder, except as may be specifically agreed in writing.

On March 22, 1994, respondent received a Notice to Proceed from the County authorizing it to begin work on the project immediately and requiring it to complete all work by May 22, 1995.[3] Almost immediately thereafter, respondent began to encounter construction delays for which it requested an extension. By letter dated November 15, 1994, a sixty-day extension of time was granted respondent. The extension was implemented through Contract Change Order No. 24, which was accepted by respondent on November 22, 1994, thereby extending the completion date from May 22, 1995 to July 21, 1995. No further completion date extensions were granted. Ultimately, construction of the project was not completed by the required date of July 21, 1995.

There were a series of preliminary allegations by respondent that a claim for an extension of time due to delays might exist. By letter dated February 23, 1995, Steven P. Dashiell, respondent's executive vice-president, informed Greenhorne that respondent "[was] currently working to develop a claim

---

**3.** The Dashiell Contract required that the work be completed within 425 consecutive calendar days after the date of commencement. Four hundred twenty-five consecutive calendar days from March 22, 1994 is May 22, 1995.

for lost time due to weather." By letter dated February 16, 1996, Stephen P. Dashiell again contacted Greenhorne stating that "the purpose of this letter is to tender formal notice that J. Roland Dashiell & Sons, Inc. *will be* preparing a claim against Caroline County as provided under the General Conditions of the Contract for Construction." (Emphasis added.) Dashiell indicated that said claim *would be* filed by April 1, 1996. Neither of these letters constituted a proper claim in compliance with section 4.3 of the General Conditions of the Contract for Construction. Instead these letters merely indicated that respondent intended to file claims in the future.

By letter dated March 13, 1996, Franklin H. Rafter, Senior Project Manager at Greenhorne, directed respondent to "proceed with the work." Dashiell responded to Greenhorne by letter dated April 9, 1996, acknowledging that a claim had not been filed by April 1, 1996, and requesting an extension of time to file this claim. Neither Greenhorne nor the County granted Dashiell's request for an extension.

By letter dated July 15, 1996, Dashiell finally submitted a claim in accordance with section 4.3 of the General Conditions of the Contract for Construction.[4] Dashiell sought a change order extending the contract completion date by 522 days and increasing the contract price by $1,061,038.00 for delays incurred up to and including June 20, 1996, allegedly due to architectural and engineer design deficiencies, weather delays, and concealed or unknown conditions. Furthermore, in a letter dated December 16, 1996, respondent made another claim for additional time and financial compensation resulting from delays, which were incurred after June 20, 1996. The County has occupied the renovated detention center since June 6, 1996.

---

4. As the Court of Special Appeals correctly noted, this claim was not timely pursuant to section 4.3.3 of the General Conditions of the Contract for Construction and did not include "an estimate of cost and of probable effect of delay on progress of the work" pursuant to section 4.3.8.1.

We granted a writ of certiorari to consider whether the circuit court properly ruled that the express, written contract between the County and respondent barred respondent's quasi-contractual claim for unjust enrichment and that respondent's claim for unjust enrichment was properly dismissed because the Affidavit of Donald Dashiell in opposition to the County's Motion for Summary Judgment was inadequate as a matter of law. We hold that the trial court did not err on either matter. Accordingly, as to the issues presented in the petition, we reverse the decision of the Court of Special Appeals.

## II. Discussion & Analysis

### A. Whether an Express Contract Bars a Claim for Unjust Enrichment

In reviewing a grant of a summary judgment, we are concerned with (1) whether a dispute of material fact exists and (2) if not, whether the movant is entitled to judgment as a matter of law. *Hartford Ins. Co. v. Manor Inn of Bethesda, Inc.*, 335 Md. 135, 144, 642 A.2d 219, 224 (1994); *Gross v. Sussex, Inc.*, 332 Md. 247, 255, 630 A.2d 1156, 1160 (1993); *Beatty v. Trailmaster Prods., Inc.*, 330 Md. 726, 737, 625 A.2d 1005, 1011 (1993); *Arnold Developer, Inc. v. Collins*, 318 Md. 259, 262, 567 A.2d 949, 951 (1990); *Bachmann v. Glazer & Glazer, Inc.*, 316 Md. 405, 408, 559 A.2d 365, 366 (1989); *King v. Bankerd*, 303 Md. 98, 110–11, 492 A.2d 608, 614 (1985). "A material fact is a fact the resolution of which will somehow affect the outcome of the case." *King*, 303 Md. at 111, 492 A.2d at 614 (citing *Lynx, Inc. v. Ordnance Prods., Inc.*, 273 Md. 1, 7–8, 327 A.2d 502, 509 (1974)). "[A] dispute as to facts relating to grounds upon which the decision is not rested is not a dispute with respect to a *material* fact and such dispute does not prevent the entry of summary judgment." *Salisbury Beauty Schs. v. State Bd. of Cosmetologists*, 268 Md. 32, 40, 300 A.2d 367, 374 (1973).

This Court also has stated that "[t]he standard of review for a grant of summary judgment is whether the trial

court was legally correct." *Goodwich v. Sinai Hosp. of Baltimore, Inc.,* 343 Md. 185, 204, 680 A.2d 1067, 1076 (1996); *see also Murphy v. Merzbacher,* 346 Md. 525, 530–31, 697 A.2d 861, 864 (1997); *Hartford Ins. Co.,* 335 Md. at 144, 642 A.2d at 224; *Gross,* 332 Md. at 255, 630 A.2d at 1160; *Heat & Power Corp., Inc. v. Air Prods. & Chems., Inc.,* 320 Md. 584, 592, 578 A.2d 1202, 1206 (1990). The trial court, in accordance with Maryland Rule 2–501(e), shall grant a motion for summary judgment "if the motion and response show that there is no genuine dispute as to any material fact and that [the moving party] is entitled to judgment as a matter of law." The purpose of the summary judgment procedure is not to try the case or to decide the factual disputes, but to decide whether there is an issue of fact, which is sufficiently material to be tried. *See Goodwich,* 343 Md. at 205–06, 680 A.2d at 1077; *Coffey v. Derby Steel Co.,* 291 Md. 241, 247, 434 A.2d 564, 567–68 (1981); *Berkey v. Delia,* 287 Md. 302, 304, 413 A.2d 170, 171 (1980). Thus, once the moving party has provided the court with sufficient grounds for summary judgment, the non-moving party must produce sufficient evidence to the trial court that a genuine dispute to a material fact exists. *See, e.g., Hoffman Chevrolet, Inc. v. Washington County Nat'l Sav. Bank,* 297 Md. 691, 712, 467 A.2d 758, 769 (1983). This requires "produc[ing] facts under oath, based on the personal knowledge of the affiant to defeat the motion. Bald, unsupported statements or conclusions of law are insufficient." *Id.* With these considerations in mind, we turn to the instant case.

In the case *sub judice* there is no genuine dispute of material fact.[5] The issue before us is whether summary

---

5. The only claim preserved for our review is the claim for unjust enrichment. There was no cross-petition filed by respondent. In the context of our review, the County contracted with respondent for the renovation of the detention center. It is, in that context, uncontested that there was a written express contract, and that respondent failed to comply with the express wording of the contract by (1) not completing the project by the required date of July 21, 1995 (the project was not completed until June of 1996) and (2) not properly filing a claim for extension of time. These are material facts to which there is no genuine dispute.

judgment should be granted as a matter of law. "In reviewing the propriety of a summary judgment, it is our responsibility to determine whether there was any issue of fact pertinent to the ruling and, if not, whether the substantive law was correctly applied. . . . Thus, to be upheld, the summary judgment under review must withstand scrutiny on both its factual and legal foundations." *Bloomgarden v. Coyer*, 479 F.2d 201, 206, 207 (D.C.Cir.1973) (footnotes omitted). Because, in the context of this review, there are no genuine disputes as to the material facts of the instant case, we are left to determine whether the principles of substantive law governing express contracts, implied contracts, and quasi-contracts were correctly applied.

Before we begin our analysis of the law of contracts, a review of the basic definitions of different contract forms is helpful. An express contract has been defined as "an actual agreement of the parties, the terms of which are openly uttered or declared at the time of making it, being stated in distinct and explicit language, either orally or in writing." *Black's Law Dictionary* 323 (6th ed.1990). "An implied contract is an agreement which legitimately can be inferred from intention of the parties as evidenced by the circumstances and 'the ordinary course of dealing and the common understanding of men.'" *Martin v. Little, Brown & Co.*, 304 Pa.Super. 424, 429, 450 A.2d 984, 987 (1981) (quoting *Hertzog v. Hertzog*, 29 Pa. 465, 468 (1857)); *see Klebe v. United States*, 263 U.S. 188, 192, 44 S.Ct. 58, 59, 68 L.Ed. 244 (1923) ("A contract implied in fact is one inferred from the circumstances or acts of the parties; but an express contract speaks for itself and leaves no place for implications."). Finally, significant to our analysis is the definition of a quasi-contract. *Black's Law Dictionary*, *supra*, at 324 defines it as a

[l]egal fiction invented by common law courts to permit recovery by contractual remedy in cases where, in fact, there is no contract, but where circumstances are such that justice warrants a recovery as though there had been a promise. It is not based on intention or consent of the parties, but is founded on considerations of justice and

equity, and on doctrine of unjust enrichment. It is not in fact a contract, but an obligation which the law creates in absence of any agreement, when and because the acts of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it.

Similarly, the Restatement (Second) of Contracts § 4 (1981) describes quasi-contracts in the following manner:

Quasi-contracts have often been called implied contracts or contracts implied in law; but, unlike true contracts, quasi-contracts are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises.[6] They are obligations created by law for reasons of justice.

While the relationship of express contracts with the doctrine of unjust enrichment appears to be an issue of first impression in this Court, the Court of Special Appeals has interpreted these legal concepts on several occasions.[7] As the Court of Special Appeals has noted:

---

**6.** Historically, there were two types of implied contracts: contract implied by fact and contract implied by law. They have distinct meanings. An implied by fact contract is "inferred from conduct of parties and arises where plaintiff, without being requested to do so, renders services under circumstances indicating that he expects to be paid therefor, and defendant, knowing such circumstances, avails himself of benefit of those services." *Black's Law Dictionary, supra,* at 323. A contract implied by law is now what commonly is called quasi-contract, *id.* at 324 ("Quasi contract"), which we have defined, *supra.* For clarity, we will refer to a contract implied by fact as an implied contract and a contract implied by law as a quasi-contract.

**7.** The Court of Special Appeals has
    set[ ] forth the three elements that must be established to sustain a claim based on unjust enrichment; these are:
    1. A benefit conferred upon the defendant by the plaintiff;
    2. An appreciation or knowledge by the defendant of the benefit; and
    3. The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.
    *Everhart v. Miles,* 47 Md.App. 131, 136, 422 A.2d 28, 31 (1980); *see also Richard F. Kline, Inc. v. Signet Bank,* 102 Md.App. 727, 731-32, 651

The general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests. (Citations omitted.) The reason for this rule is not difficult to discern. When parties enter into a contract they assume certain risks with an expectation of a return. Sometimes, their expectations are not realized, but they discover that under the contract they have assumed the risk of having those expectations defeated. As a result, they have no remedy under the contract for restoring their expectations. In desperation, they turn to quasi-contract for recovery. This the law will not allow.

*Mass Transit Admin. v. Granite Constr. Co.*, 57 Md.App. 766, 776, 471 A.2d 1121, 1126 (1984) (quoting *Industrial Lift Truck Serv. Corp. v. Mitsubishi Int'l Corp.*, 104 Ill.App.3d 357, 360–61, 60 Ill.Dec. 100, 432 N.E.2d 999, 1002 (1982)); *see also First Nat'l Bank v. Burton, Parsons & Co.*, 57 Md.App. 437, 451–52, 470 A.2d 822, 830, *cert. denied*, 300 Md. 88, 475 A.2d 1200 (1984) (quoting the same); *Francis O. Day Co. v. Montgomery County*, 102 Md.App. 514, 521, 650 A.2d 303, 306 (1994) ("[I]f appellant's claim against appellee is based on a written contract, then there can be no unjust enrichment."), *overruled on other grounds by Harford County v. Town of Bel Air*, 348 Md. 363, 704 A.2d 421 (1998).

These Court of Special Appeal opinions have been interpreted by the United States District Court for the District of Maryland: "It is settled law in Maryland, and elsewhere, that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties." *FLF, Inc. v. World Publications, Inc.*, 999 F.Supp. 640, 642 (1998). As the federal district court said in *Dunnaville v. McCormick & Co.*, 21 F.Supp.2d 527, 535 (1998), "[u]njust enrichment and quantum meruit, both 'quasi-

A.2d 442, 444, *cert. denied*, 338 Md. 201, 657 A.2d 795 (1995); *Yost v. Early*, 87 Md.App. 364, 386–87, 589 A.2d 1291, 1302, *cert. denied*, 324 Md. 123, 596 A.2d 628 (1991); *Mass Transit Admin. v. Granite Constr. Co.*, 57 Md.App. 766, 774, 471 A.2d 1121, 1125 (1984).

contract' causes of action, are remedies to provide relief for a plaintiff when an enforceable contract does not exist but fairness dictates that the plaintiff receive compensation for services provided."

This rationale has been followed universally in both federal and state courts. *MacDraw, Inc. v. CIT Group Equip. Fin., Inc.,* 157 F.3d 956, 964 (2d Cir.1998) (" '[T]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract [*i.e.,* unjust enrichment] for events arising out of the same subject matter.' " (second alteration in original) (quoting *U.S. East Telecomms., Inc. v. U.S. West Communications Servs., Inc.,* 38 F.3d 1289, 1296 (2d Cir.1994))); *Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp.,* 139 F.3d 1396, 1413 (11th Cir.1998) ("Recovery on a theory of unjust enrichment . . . is only available 'when as a matter of fact there is no legal contract.' " (quoting *Regional Pacesetters, Inc. v. Halpern Enter., Inc.,* 165 Ga.App. 777, 782, 300 S.E.2d 180, 185 (1983))); *Member Servs. Life Ins. Co. v. American Nat'l Bank & Trust Co. of Sapulpa,* 130 F.3d 950, 957 (10th Cir.1997) ("[Q]uasi-contractual remedies . . . are not to be created when an enforceable express contract regulates the relations of the parties with respect to the disputed issue. Courts have recognized this principle and have stated their unwillingness to resort to the doctrine of unjust enrichment to override a contractual plan provision. Concomitantly, courts have held that enrichment is not unjust when authorized by an express provision of the plan." (citations omitted)), *cert. denied,* 523 U.S. 1139, 118 S.Ct. 1843, 140 L.Ed.2d 1093 (1998); *Paracor Fin., Inc. v. General Elec. Capital Corp.,* 96 F.3d 1151, 1167 (9th Cir.1996) ("[U]njust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties."); *Klein v. Arkoma Prod. Co.,* 73 F.3d 779, 786 (8th Cir.) ("Normally, when an express contract exists between the parties, unjust enrichment is not available as a means of recovery."), *cert. denied,* 519 U.S. 815, 117 S.Ct. 65, 136 L.Ed.2d 27 (1996); *Gadsby v. Norwalk Furniture Corp.,* 71 F.3d 1324, 1333 (7th

Cir.1995) ("[R]estitution is unavailable where an express contract governs the parties' relationship and where there is an adequate remedy at law.").[8]

---

**8.** *See also Bright v. QSP, Inc.*, 20 F.3d 1300, 1306 (4th Cir.) ("[N]o quasi-contractual recovery is possible 'when the parties have clearly and plainly expressed in writing the actual contract between them'." (quoting *Shanks v. Wilson*, 86 F.Supp. 789, 794 (S.D.W.Va.1949))), *cert. denied*, 513 U.S. 875, 115 S.Ct. 202, 130 L.Ed.2d 133 (1994); *In re Chateaugay Corp.*, 10 F.3d 944, 958 (2d Cir.1993) (" '[T]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.' " (quoting *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 516 N.E.2d 190, 193 (1987))); *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 408–09 (9th Cir.1992) (holding that a party cannot recover on a claim of unjust enrichment where the parties' relationship was governed by a valid express contract); *Acorn Structures, Inc. v. Swantz*, 846 F.2d 923, 926 (4th Cir.1988) ("An action for unjust enrichment is quasi-contractual in nature and may not be brought in the face of an express contract."); *Bloomgarden*, 479 F.2d at 210 ("The quasi-contract . . . is not really a contract, but a legal obligation closely akin to a duty to make restitution. There is, of course, no need to resort to it when the evidence sustains the existence of a true contract, either express or implied in fact." (citation omitted)); *Valley Forge Convention & Visitors Bureau v. Visitor's Servs., Inc.*, 28 F.Supp.2d 947, 950 (E.D.Pa.1998) ("[T]he doctrine of unjust enrichment is inapplicable where the parties' relationship is based upon an express agreement."); *Brown v. Coleman Invs., Inc.*, 993 F.Supp. 432, 438 (M.D.La.1998) ("Quasi-contractual remedies may not supplant a contract between the parties." (quoting *Marple v. Kurzweg*, 902 F.2d 397, 401 (5th Cir.1990))); *Mobil Oil Corp. v. Dade County Esoil Management Co.*, 982 F.Supp. 873, 880 (S.D.Fla.1997) ("It is only upon a showing that an express contract exists that the unjust enrichment . . . count fails."); *Virginia Vermiculite Ltd. v. W.R. Grace & Co.*, 965 F.Supp. 802, 829 (W.D.Va.1997) ("Under Virginia law, the existence of an express contract governing a transaction between parties bars a claim for unjust enrichment (a form of implied or quasi-contract) based on that transaction."), *rev'd on other grounds*, 156 F.3d 535 (4th Cir.1998); *R.J. Wildner Contracting Co. v. Ohio Turnpike Comm'n*, 913 F.Supp. 1031, 1043 (N.D.Ohio 1996) ("[I]n the absence of fraud or bad faith, Ohio law prohibits recovery under a theory of unjust enrichment where an express contract covers the same subject."); *Tractor & Farm Supply, Inc. v. Ford New Holland, Inc.*, 898 F.Supp. 1198, 1206 (W.D.Ky.1995) ("[T]he doctrine of unjust enrichment has no application in a situation where there has been an explicit contract which has been performed."); *Holland v. Cline Bros. Mining Co.*, 877 F.Supp. 308, 316 (S.D.W.Va.1995) ("It is now beyond cavil that a claim for unjust enrichment may not be founded upon the terms of an express contract."); *Violette v. Armonk Assocs., L.P.*, 872 F.Supp. 1279, 1282

(S.D.N.Y.1995); *Chrysler Capital Corp. v. Century Power Corp.*, 778 F.Supp. 1260, 1272 (S.D.N.Y.1991) ("Unjust enrichment is a quasi-contract claim, and the existence of a *valid and enforceable* written contract governing a particular subject matter ordinarily precludes recovery in quasi-contract for events arising out of the same subject matter." (internal quotations omitted)); *Shanks*, 86 F.Supp. at 794 (holding that no quasi-contractual recovery is possible "when the parties have clearly and plainly expressed in writing the actual contract between them."); *Brooks v. Valley Nat'l Bank*, 113 Ariz. 169, 174, 548 P.2d 1166, 1171 (1976) ("[W]here there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application."); *Feng v. Dart Hill Realty, Inc.*, 26 Conn.App. 380, 383, 601 A.2d 547, 548 ("Proof of a contract enforceable at law precludes the equitable remedy of unjust enrichment."), *cert. denied*, 223 Conn. 912, 612 A.2d 59 (1992); *Blaser v. Cameron*, 121 Idaho 1012, 1017, 829 P.2d 1361, 1366 (Idaho Ct.App.1991) ("Generally, a party cannot recover under the equitable theory of unjust enrichment where there is an enforceable express contract covering the same subject matter."); *Perez v. Citicorp Mortgage, Inc.*, 301 Ill.App.3d 413, 425, 234 Ill.Dec. 657, 703 N.E.2d 518, 526 (1998) ("The theory of unjust enrichment is based on a contract implied in law and, therefore, does not apply where there is a specific contract that governs the relationship of the parties."); *Prodromos v. Poulos*, 202 Ill.App.3d 1024, 1032, 148 Ill.Dec. 345, 560 N.E.2d 942, 948 (1990), *appeal denied*, 136 Ill.2d 553, 153 Ill.Dec. 383, 567 N.E.2d 341 (1991); *Batler, Capitel & Schwartz v. Tapanes*, 164 Ill.App.3d 427, 430, 115 Ill.Dec. 530, 517 N.E.2d 1216, 1219 (1987), *appeal denied*, 119 Ill.2d 553, 119 Ill.Dec. 381, 522 N.E.2d 1240 (1988); *Industrial Lift Truck Serv. Corp.*, 104 Ill.App.3d at 360, 60 Ill.Dec. 100, 432 N.E.2d at 1002; *Ellis v. Anderson Tully Co.*, 727 So.2d 716, 719 (Miss.1998) ("To collect under an unjust enrichment or quasi-contract theory, the claimant must show 'there is no legal contract ....'" (quoting *Estate of Johnson v. Adkins*, 513 So.2d 922, 926 (Miss.1987) (quoting *Hans v. Hans*, 482 So.2d 1117, 1122 (Miss.1986)))); *Washa v. Miller*, 249 Neb. 941, 950, 546 N.W.2d 813, 818–19 (1996) ("The doctrine of unjust enrichment is recognized only in the absence of an agreement between the parties."); *Shalita v. Township of Washington*, 270 N.J.Super. 84, 90, 636 A.2d 568, 571 (App.Div.1994) ("'Quasi-contract liability [should] not be imposed ... if an express contract exists concerning the identical subject matter.'" (alteration in original) (quoting *Suburban Transfer Serv. v. Beech Holdings, Inc.*, 716 F.2d 220, 226–27 (3d Cir.1983))); *State Farm Mut. Auto. Ins. Co. v. Atlantic Indemnity Co.*, 122 N.C.App. 67, 468 S.E.2d 570, 574 (1996) (holding that if there is an actual contract between the parties, the contract governs the claim and unjust enrichment will not apply); *Clark–Fitzpatrick*, 70 N.Y.2d at 388, 521 N.Y.S.2d 653, 516 N.E.2d at 193 ("A 'quasi contract' only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment."); *Inglish v. Prudential Ins. Co.*, 928 S.W.2d 702, 706 (Tex.App.1996, writ denied); *Chandler v. Washington Toll Bridge Auth.*, 17 Wash.2d 591, 604, 137 P.2d 97, 103 (1943) ("A party to a valid express contract is bound by the provisions of that contract, and may not disregard the

Generally, courts are hesitant to deviate from the principle of the rule and allow unjust enrichment claims only when there is evidence of fraud or bad faith,[9] there has been a breach of contract or a mutual recission of the contract,[10] when recission is warranted,[11] or when the express contract does not fully address a subject matter.[12] None of these exceptions that have been recognized elsewhere apply in the case *sub judice.*

▪▪▪ In the case *sub judice* there was an express contract between the County and respondent for the renovation of the Caroline County Detention Center. There has been no evidence presented that would lead us to believe that an exception to the general rule is warranted. The subject matter of respondent's claim—recovery of money for work performed on the Detention Center—is covered specifically by several valid and enforceable provisions of the written contract between the parties. As well as covering the basic guidelines for construction of the building addition, the contract clearly addressed the process for submitting claims, for liquidated damages, and for the waiver of rights and duties. Respondent's claim that the County has been unjustly enriched because of its use of the detention center is clearly without merit. Even if the County was enriched, such enrichment was not unjust because it was in strict compliance with the terms of their contract. To hold otherwise would turn the basic foundation of contract

---

same and bring an action on an implied contract relating to the same matter, in contravention of the express contract."); *Continental Cas. Co. v. Wisconsin Patients Compensation Fund,* 164 Wis.2d 110, 118, 473 N.W.2d 584, 587 (Wis.Ct.App.) ("The doctrine of unjust enrichment does not apply where the parties have entered into a contract."), *review denied,* 479 N.W.2d 172 (Wis.1991).

9. *See R.J. Wildner Contracting Co.,* 913 F.Supp. at 1043.

10. *See Feng,* 26 Conn.App. at 383, 601 A.2d at 548.

11. *See Clark–Fitzpatrick,* 70 N.Y.2d at 389, 521 N.Y.S.2d 653, 516 N.E.2d at 193.

12. *See Klein,* 73 F.3d at 786.

law on its ear. "This rule holds the contract parties to their agreement and prevents a party who made a bad business decision from asking the court to restore his expectations." *Prodromos v. Poulos,* 202 Ill.App.3d 1024 1032, 148 Ill.Dec. 345, 560 N.E.2d 942, 948 (1990); *see also Washa v. Miller,* 249 Neb. 941, 950, 546 N.W.2d 813, 819 (1996) ("The doctrine does not operate to rescue a party from the consequences of a bad bargain."). Both the County and respondent got what they bargained for by the terms of the contract.

■ The contract defined the entire relationship of the parties with respect to its general subject matter. Respondent is now attempting, via a theory of unjust enrichment, to get over $2,000,000.00 in damages and a return of $326,621.00 that the County withheld as liquidated damages for delay, even though its contract with the County specifically covers this subject matter. Respondent's attempt to recover under a theory of quasi-contract is nothing more than a unilateral attempt to amend the agreement in a manner that the law does not allow. *Cf. Industrial Lift Truck Serv. Corp.,* 104 Ill.App.3d at 362, 60 Ill.Dec. 100, 432 N.E.2d at 1003. "Parties entering into a contract assume certain risks with the expectation of a beneficial return; however, when such expectations are not realized, they may not turn to a quasi-contract theory for recovery." *Batler, Capitel & Schwartz v. Tapanes,* 164 Ill.App.3d 427, 430, 115 Ill.Dec. 530, 517 N.E.2d 1216, 1219 (1987). There was an express contract between the parties that controlled this subject matter; therefore, respondent cannot seek relief through the quasi-contractual remedy of unjust enrichment. We hold that, generally, quasi-contract claims such as quantum meruit and unjust enrichment cannot be asserted when an express contract defining the rights and remedies of the parties exists.

### B. Whether Dashiell's Affidavit was Inadequate as a Matter of Law

Respondent concludes in its brief that the decision of the Court of Special Appeals should be affirmed "and the litigation remanded to the Circuit Court so that Respondent can pursue

proof of its unjust enrichment claim against Caroline County."
We have held that respondent has no unjust enrichment claim
against the County. No other issues have been presented to
us. The Affidavit at issue does not challenge the existence of
a written, express contract between the parties. It concerns
itself with whether notice under the express contract was
made, and if made, was sufficient. In proffering the notice
issues, it, in essence, admits the existence of a written express
contract. Accordingly, the matter of the sufficiency of the
Affidavit in respect to the claim of "unjust enrichment" is
moot and we need not address it, although we have frequently
held that such affidavits must be made on personal knowledge
and that language such as "to the best of his or her knowl-
edge, information and belief" is not sufficient. *See Alan F.
Post, Chtd. v. Bregman,* 349 Md. 142, 154 n. 5, 707 A.2d 806,
811 n. 5 (1998). As we said in *A.J. Decoster Co. v. Westing-
house Elec. Corp.,* 333 Md. 245, 263, 634 A.2d 1330, 1338–39
(1994):

> [Maryland] Rule 2–501(c) requires that "[a]n affidavit
> supporting or opposing a motion for summary judgment
> shall be made upon personal knowledge, shall set forth such
> facts as would be admissible in evidence, and shall show
> affirmatively that the affiant is competent to testify to the
> matters stated in the affidavit." We have long held that to
> be sufficient to sustain a motion for summary judgment, an
> affidavit must contain language that it is made on personal
> knowledge. [Citations omitted.]

*See Ehrlich v. Board of Educ.,* 257 Md. 542, 546, 263 A.2d 853,
855 (1970) (holding that an affidavit that was not made upon
personal knowledge of the affiant was ineffective); *Mercier v.
O'Neill Assocs., Inc.,* 249 Md. 286, 287 n. 1, 239 A.2d 564, 564
n. 1 (1968) (holding that an affidavit stating that it was "true
and correct *to the best of his knowledge and belief* ... [was]
defective in form and substance."); *Phelps v. Herro,* 215 Md.
223, 227, 137 A.2d 159, 161 (1957) (holding that an affidavit not
made on personal knowledge "was clearly defective."); *Tellez
v. Canton R.R. Co.,* 212 Md. 423, 429, 129 A.2d 809, 812 (1957)
(holding that an affidavit not made on the personal knowledge

of the affiant is not admissible in evidence).[13]  "In other words, an affiant must attest to personal knowledge of the facts asserted and a basis for that knowledge." *Great Atlantic & Pacific Tea Co. v. Imbraguglio,* 346 Md. 573, 598, 697 A.2d 885, 897 (1997).

In the case *sub judice,* the Affidavit of Donald Dashiell, in opposition to the County's Motion for Summary Judgment, said in relevant part, "I declare and affirm under the penalties of perjury that the contents of this Affidavit are true *according to my best knowledge, information and belief.*" (Emphasis added.)  Clearly, this Affidavit is not in the format required by the language of Maryland Rule 2–501(c) and its supporting caselaw.  In fact, three of the cases discussed, *supra,* address this situation directly and hold that affidavits that are based on "the best of one's knowledge, information, and belief," or similar attestation, are insufficient to support a motion for summary judgment or an answer in opposition to such motion.  *Mercier,* 249 Md. at 287 n. 1, 239 A.2d at 564 n. 1; *White,* 210 Md. at 280, 123 A.2d at 305; *Fletcher,* 198 Md. at 58, 81 A.2d at 234.  When an affidavit is required, it must contain language that it is made on "personal knowledge," in order for it to be sufficient to sustain a motion for summary judgment, or a reply to a motion for summary judgment, and that wording such as "to the best of my knowledge, information and belief" is generally insufficient to satisfy this requirement.  Accordingly, even if the issue was not moot, the Affidavit of Donald Dashiell was inadequate as a matter of law and petitioner's motion for summary judgment was properly

---

**13.**  *See also White v. Friel,* 210 Md. 274, 280, 123 A.2d 303, 305 (1956) ("[A]n affidavit to the effect that an allegation is true to the best of one's knowledge and belief is not a sufficient affidavit. . . .");  *Fletcher v. Flournoy,* 198 Md. 53, 58, 81 A.2d 232, 234 (1951) (holding that an affidavit stating that it was " 'to the best of his knowledge, information and belief' . . . must be disregarded."), *cert. denied,* 343 U.S. 917, 72 S.Ct. 649, 96 L.Ed. 1331 (1952); *Webb v. Joyce Real Estate, Inc.,* 108 Md.App. 512, 520, 672 A.2d 660, 663–64, *cert. denied,* 342 Md. 584, 678 A.2d 1049 (1996); *Vanhook v. Merchants Mut. Ins. Co.,* 22 Md.App. 22, 26, 321 A.2d 540, 543 (1974).

granted. Without the affidavit, there was no genuine dispute between the parties as to any material fact.

### III. Conclusion

We hold that the circuit court properly ruled that the express, written contract between the County and respondent barred respondent's quasi-contractual claims. The circuit court also properly dismissed respondent's claim for unjust enrichment because the Affidavit of Donald Dashiell in opposition to the County's Motion for Summary Judgment was inadequate as a matter of law. Accordingly, we reverse the part of the decision of the Court of Special Appeals that upheld the "unjust enrichment" claim.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED IN PART; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR CAROLINE COUNTY; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.**